Argued and submitted March 31, property division and award of attorney fees vacated and remanded for reconsideration; otherwise affirmed May 13, 2015

In the Matter of the Marriage of

Tina Jeanette CIRINA,
*Petitioner-Respondent,*
*and*

Marco Jesse CIRINA,
*Respondent-Appellant.*

Josephine County Circuit Court
12DR1161; A156581

350 P3d 504

George W. Kelly argued the cause and filed the brief for appellant.

No appearance for respondent.

Before Duncan, Presiding Judge, and Lagesen, Judge, and Flynn, Judge.

LAGESEN, J.

**LAGESEN, J.**

In this appeal, husband challenges four aspects of the judgment dissolving his marriage to wife. First, husband argues that the trial court's property division was flawed because the court allocated a significant debt—$130,599.83 owed to husband's father—entirely to husband, notwithstanding the fact that the debt was incurred to pay off a loan on the marital residence. In his second and third assignments of error, husband argues that the trial court miscalculated his income, resulting in erroneous awards of spousal and child support. Finally, husband argues that the trial court erred in awarding attorney fees to wife when she had not filed a request pursuant to ORCP 68. In reviewing the dissolution judgment, "we are bound by the trial court's factual findings if they are supported by any evidence in the record, and we review the court's legal conclusions for errors of law." *Kirkpatrick and Kirkpatrick*, 248 Or App 539, 541 n 1, 273 P3d 361 (2012).[1] For the reasons that follow, we vacate and remand for the trial court to reconsider its property division and award of attorney fees, but we reject husband's contentions regarding the calculation of his support obligations.

## PROPERTY DIVISION

We describe only those facts underlying the trial court's property division that bear on our resolution of husband's claim of error on appeal. One of the main issues at trial concerned the fact that, during the course of the parties' marriage, husband's father paid off a mortgage of $130,599.83 on the marital residence. The parties offered conflicting evidence regarding the nature of that payoff. Wife understood the money to be a gift from husband's father that would not be paid back. Husband, for his part, testified that the money was a loan, and he offered a promissory note to that effect as an exhibit; the note was signed by husband only, and it was undisputed that wife did not learn of the payoff until after it happened.

---

[1] We decline husband's request to exercise our discretion to engage in *de novo* review in this case. *See* ORAP 5.40(8)(c) (describing the presumption against the exercise of such discretion).

In dividing the parties' assets, the trial court did not expressly decide whether the payment by husband's father was a loan or a gift. Rather, the court appears to have reasoned that, even assuming that the payment was a loan, the debt should be allocated solely to husband because wife had not signed the promissory note. The court explained:

> "The Court heard a great deal of testimony about each [party's] impression as to the import of the payment in excess of $130,000 made by [husband's father] to satisfy the first lien on the couple's home; and the resulting promissory note, petitioner's exhibit 11. However, the most compelling item of evidence to this Court is the fact that the promissory note was not signed by [wife]. There is a strong public policy contained in Oregon law, against charging nonsignatories to many types of indebtedness, or other promises, especially one as large as a debt for $130,000+.

> "* * * * *

> "Attorneys can argue about whether or not [the statute of frauds or the parol evidence rule] apply precisely to this promissory note; but it is clear that [those statutes] express a wise legal policy of requiring written acknowledgement of obligations. Given the fact that the parties' residence is titled in each [party's] name; and the note is evidence of a payoff of a lien on the residence; and makes reference to the future sale of the residence; it is inexplicable that both parties were not required to sign the note. As indicated by [wife's] exhibit 18,[2] it is evident that in other lending transactions, [husband's father] did require both spouses to sign the promissory note. Therefore, the Court finds that the note is the sole responsibility of [husband]."

The court then entered a dissolution judgment that stated, "The Court finds that the Promissory Note between [husband] and [his father] dated January 22, 2010 in the amount of $130,599.83 is the sole responsibility of [husband,] * * * who shall hold harmless and indemnify [wife] therefrom."[3]

---

[2] Exhibit 18 was a promissory note for a loan of $30,000 that husband's father made to a different couple. It is signed by both spouses and notarized.

[3] Another provision in the judgment states:

"Promissory Note. [Husband's father] holds a Promissory Note in the amount of $130,599.83 to satisfy the first lien on the parties'

On appeal, husband argues that the trial court's analysis concerning the promissory note fails to account for the presumption that marital debts are shared equally between the parties. *See Uwimana and Rwangano*, 209 Or App 693, 696, 149 P3d 257 (2006) ("Like marital assets, marital debt is presumptively evenly divided, with the ultimate division guided by consideration of what is just and proper[.]" (Internal citation omitted.)). We agree. Contrary to the trial court's reasoning as we understand it, a party's signature on a debt instrument is not dispositive with respect to whether the underlying obligation is a "marital debt." In determining whether an obligation is a martial debt, a court must "'focus not on the person in whose name [the debt was incurred], but on the use to which it was put.'" *Christensen and Christensen*, 253 Or App 634, 639, 292 P3d 568 (2012) (quoting *Branscomb and Branscomb*, 201 Or App 188, 202, 117 P3d 1051, *rev den*, 339 Or 544 (2005) (alteration in *Christensen*)). "If the debt was incurred to pay family expenses, equal division of the debt is generally appropriate. If, on the other hand, the debt is properly attributed to only one of the parties, the debt should generally remain that party's responsibility." *Id.* at 639-40.

The trial court in this case thus employed the wrong legal analysis in assessing whether the payoff by husband's father resulted in a marital debt. As described above, rather than determining (1) whether the promissory note reflects actual debt (as opposed to a gift) and (2) if so, the use to which that debt was put, the court instead based its determination on the fact that wife had not signed the note. We therefore vacate the trial court's property division so that the court can consider, in the first instance, the following questions: (1) whether the payoff was a gift or a loan; (2) if it was a loan, whether it was marital debt based on the purpose for which it was incurred; (3) if it was marital debt, whether wife overcame the presumption that it should

residence and real property located at 1425 Half Moon Circle, Grants Pass, Oregon.

"1. [Husband] shall be fully responsible to pay [his father] the amount due for the Promissory Note in the amount of $130,599.83 and [husband] shall hold [wife] harmless and indemnify her therefrom."

be divided equally; and (4) whether the ultimate division is just and equitable.[4]

### INCOME CALCULATION

In his second and third assignments of error, husband contends that the trial court erred in calculating his spousal and child support obligations based on his income from 2013, notwithstanding the fact that his future income was set to decrease as a result of a change in his employer's compensation plan at the beginning of 2014. We reject both assignments.

As with the property division, we set forth only those facts necessary to frame husband's arguments and explain our resolution of them. Husband, who worked most recently as a sales manager for a car dealership, saw his gross income dip in 2010 ($64,576) before steadily rising in 2011 ($78,505), 2012 ($93,401), and 2013 ($115,932). However, husband testified that his pay structure had shifted at the beginning of 2014 to a model where he receives $6,000 per month or 4.5 percent of "Total Sales Gross," whichever is greater, because the market had improved and his employer believed that he made too much money in 2013. He offered a copy of his new compensation plan, which provided a "Calculation Example" of commission earnings that showed compensation of $6,750 per month based on gross sales of $150,000, which husband testified was his "target." Husband testified, and his counsel estimated, that it would be unlikely that he could duplicate his 2013 income in 2014 "if business stays the same."

Contrary to husband's premise on appeal, the trial court was not obligated to credit his self-serving testimony that his income would decrease or that business would "stay the same" in 2014. And absent evidence *compelling* the finding that husband's 2014 earnings would be lower than his 2013 earnings, husband's 2013 wages are "some evidence" to support the trial court's factual finding that, at the time of trial in January 2014, husband's annual income was the same as what it had been in 2013, particularly in light of the

---

[4] Although there is wording in the dissolution judgment that suggests that the promissory note reflects an actual debt, *see* 271 Or App at 164 & n 3, the court's letter opinion is noncommittal on that point. Rather than speculate as to the court's view of that particular factual issue, we remand for the trial court to clarify its view of the record and to make any further findings, if necessary.

clear upward trend in husband's earnings.[5] *See Logan and Logan*, 270 Or App 176, 182-83, 347 P3d 337 (2015) (rejecting the husband's argument that the record compelled a different factual finding regarding his likely retirement age where there was some evidence in the record to support the court's implicit finding that he could work until age 79). We therefore reject husband's second and third assignments of error without further discussion.[6]

## ATTORNEY FEES

In his final assignment of error, husband argues that the trial court erred in awarding attorney fees to wife when wife had not filed a statement of fees under ORCP 68. Our decision regarding the property division obviates the need to address this assignment. The trial court's award of attorney fees was predicated, in part, on the fact that husband had "insisted on litigating the issue of [his father's] note" at trial. Because we vacate and remand for the trial court to reconsider questions concerning the promissory note and property division, we likewise vacate and remand the award of attorney fees. *See, e.g., Proctor and Proctor*, 204 Or App 250, 252, 129 P3d 186, *rev den*, 340 Or 672 (2006) ("In light of our decision to reverse and remand the property division for reconsideration, we vacate the trial court's decision on attorney fees and remand for reconsideration of that issue as well.").

Property division and award of attorney fees vacated and remanded for reconsideration; otherwise affirmed.

---

[5] The evidence falls far short of compelling a finding that husband's income would decrease in 2014. On cross-examination, husband conceded that "much of *** what is on this [new compensation plan] is really speculative because you don't really know what commissions are going to be." He then had the following exchange with wife's counsel:

"Q. Okay, because under this plan you could make more than this amount of 6,750?"

"A. I could make 100,000 technically.

"Q. Right. It's, so at this point it's speculative?

"A. Correct."

[6] If husband's future income is substantially lower than anticipated, he can petition the court to modify his support obligations. *See* ORS 107.135(3)(a); *Logan*, 270 Or App at 184-85 (similarly noting the availability of a remedy under ORS 107.135(3)(a) in the context of a trial court's finding regarding the husband's retirement date).