No. 158          March 6, 2024          391

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

In the Matter of the Marriage of

Mary B. WARD,
*Petitioner-Respondent,*
*and*

Michael W. WARD,
aka Michael William Ward,
*Respondent-Appellant.*

Columbia County Circuit Court
19DR11213; A177528

Michael T. Clarke, Judge.

Argued and submitted February 8, 2024.

Collin McKean argued the cause for appellant. Also on the briefs was McKean Smith.

Michelle L. Prosser argued the cause for respondent. Also on the brief was Stahancyk, Kent & Hook, P.C.

Before Tookey, Presiding Judge, Egan, Judge, and Kamins, Judge.

KAMINS, J.

Affirmed.

**KAMINS, J.**

Father appeals from the judgment in this dissolution proceeding. The parties were married for nearly 14 years and share three minor children. Following a trial, the trial court issued a letter opinion deciding the disputed matters between the parties and entered judgment. Father raises three assignments of error challenging the trial court's decisions on child custody, spousal support, and attorney fees. We affirm.

At the outset, we address a question of preservation that impacts father's arguments on appeal. Father's arguments rely, in great part, on the premise that the trial court erred in failing to enforce the terms of documents that he asserts constitute a stipulated agreement of dissolution filed by the parties in Cowlitz County, Washington (pleadings which were rejected by the Cowlitz County Court) prior to the commencement of the present litigation. Mother contends that father failed to preserve the argument that the trial court must abide by the terms of the Cowlitz County agreement. We agree. Although the parties discussed the Cowlitz County agreement before the trial court, father did not seek to enforce the agreement's terms. *See Peeples v. Lampert*, 345 Or 209, 219, 191 P3d 637 (2008) ("The general requirement that an issue, to be raised and considered on appeal, ordinarily must first be presented to the trial court is well-settled in our jurisprudence.").

Father seeks *de novo* review of all three assignments of error. *See* ORS 19.415(3)(b) ("Upon an appeal in an equitable action or proceeding other than an appeal from a judgment in a proceeding for the termination of parental rights, the Court of Appeals, acting in its sole discretion, may try the cause anew upon the record or make one or more factual findings anew upon the record."). We consider a series of factors in deciding whether to take *de novo* review. ORAP 5.40(8)(d).[1] Because the parties have provided us with an

---

[1] ORAP 5.40(8)(d) provides:

"The Court of Appeals considers the items set out below to be relevant to the decision whether to exercise its discretion to try the cause anew on the record or make one or more factual findings anew on the record. These considerations, which are neither exclusive nor binding, are published to inform and assist the bar and the public.

analysis of those factors, we address them here. In certain "exceptional cases," we will exercise *de novo* review of a trial court's decision, *Dept. of Human Services v. D. W. M.*, 296 Or App 109, 111, 437 P3d 1186 (2019) (citing ORAP 5.40(8)(c)); in making that determination, we consider the factors contained in ORAP 5.40(8)(d)).

Initially, we note that father generally requests that we find certain facts anew (or perhaps try the entire case anew), but he fails to identify *which* facts with any specificity, making our evaluation of his request for *de novo* review difficult. Turning to the *de novo* review factors, we first consider whether the trial court made express factual findings, including demeanor-based credibility findings, which would weigh against taking *de novo* review. ORAP 5.40(8)(d)(i). Here, the record reflects that the trial court made express factual findings to support its decisions to grant mother legal custody, award spousal support, and order father to pay a portion of mother's attorney fees. Second, we examine whether the trial court's decision comports with its express factual findings or with uncontroverted evidence in the record, which would also weigh against exercising *de novo* review. ORAP 5.40(8)(d)(ii). The trial court's decision in this case is consistent with its findings, and its decision is internally consistent. For instance, the court found that mother was more "in-tuned" with the children and their needs, which supports its decision to grant mother legal

---

"(i) Whether the trial court made express factual findings, including demeanor-based credibility findings.

"(ii) Whether the trial court's decision comports with its express factual findings or with uncontroverted evidence in the record.

"(iii) Whether the trial court was specifically alerted to a disputed factual matter and the importance of that disputed factual matter to the trial court's ultimate disposition of the case or to the assignment(s) of error raised on appeal.

"(iv) Whether the factual finding(s) that the appellant requests the court find anew is important to the trial court's ruling that is at issue on appeal (*i.e.*, whether an appellate determination of the facts in appellant's favor would likely provide a basis for reversing or modifying the trial court's ruling).

"(v) Whether the trial court made an erroneous legal ruling, reversal or modification of which would substantially alter the admissible contents of the record (*e.g.*, a ruling on the admissibility of evidence), and determination of factual issues on the altered record in the Court of Appeals, rather than remand to the trial court for reconsideration, would be judicially efficient."

custody. *See DHS v. Three Affiliated Tribes of Fort Berthold*, 236 Or App 535, 541 n 6, 238 P3d 40 (2010) ("[W]e would decline to exercise our discretion to review *de novo*, particularly where, as here, the trial court issued extensive factual findings, ORAP 5.40(8)(d)(i), and its decision comports with those findings, ORAP 5.40(8)(d)(ii).").

Next, we assess whether the trial court was specifically alerted to the disputed factual matter and the importance of that matter to the court's ultimate disposition of the case or to the assignments of error raised on appeal. ORAP 5.40(8)(d)(iii). In this case, father contends that the trial court was alerted to a disputed factual matter—the enforceability of the Cowlitz County agreement. However, that is a legal, not a factual, matter. And, although the trial court was certainly made aware of the *existence* of those documents, father did not alert the court to his desire to enforce them in this proceeding.

Fourth, we consider whether the facts that we are requested to find anew are important to the trial court's ruling that is at issue on appeal. ORAP 5.40(8)(d)(iv). Father identifies the court's best-interests determination as the "factual finding" he requests that this court find anew. However, a new best-interests decision is not a pure finding of fact, but a discretionary determination by the trial court. *See Sjomeling v. Lasser*, 251 Or App 172, 187 n 10, 285 P3d 1116, *rev den*, 353 Or 103 (2012) (describing best-interests determinations as "case-determining ruling[s]" that we review for abuse of discretion). It is impossible for us to review this factor without father identifying which factual findings he requests the court find anew. As such, it does not weigh toward taking *de novo* review. Finally, the parties agree that the fifth factor—whether the trial court made an erroneous legal ruling, the reversal or modification of which would substantially alter the admissible contents of the record, ORAP 5.40(8)(d)(v)—is inapplicable in this case. In sum, we are unconvinced that this case is an "exceptional" one, *D. W. M.*, 296 Or App at 111, warranting *de novo* review.

Accordingly, we turn to the merits, reviewing the trial court's custody determination for an abuse of discretion, and we will reverse the decision only if it is not a

"legally permissible one." *Southard and Larkins*, 275 Or App 89, 97-98, 364 P3d 1006 (2015), *rev den*, 359 Or 39 (2016) (internal quotation marks omitted). In his first assignment of error, father argues that the trial court erred in granting legal custody to mother. Father first contends that the trial court did not correctly apply the best-interests factors, specifically taking issue with the trial court's analysis under ORS 107.137(1)(e) and (f).[2]

We conclude that the trial court adequately applied the factors. Although the trial court observed that father "has worked to become an equal caregiver," the court identified mother as "the primary caregiver," ORS 107.137(1)(e). And, in its analysis of ORS 107.137(1)(f), the trial court weighed evidence that father had drained the parties' bank account, leaving mother no money to support herself or the children, threw away family memorabilia, and for a time failed to make an effort to see the children. While father points to conflicting evidence in the record, it cannot be said that the trial court exercised its discretion in a manner that is "clearly against all reason and evidence." *Botofan-Miller and Miller*, 365 Or 504, 506, 446 P3d 1280 (2019), *cert den*, ___ US ___, 141 S Ct 134, 207 L Ed 2d 1079 (2020).

Within his first assignment of error, father expresses concern that the trial court, in making its best-interests determination, faulted father for needlessly litigating the dissolution in two states. But the record contains evidence to support the trial court's finding that father's decision to

---

[2] ORS 107.137(1) provides, in relevant part:

"Except as provided in subsection (6) of this section, in determining custody of a minor child under ORS 107.105 or 107.135, the court shall give primary consideration to the best interests and welfare of the child. In determining the best interests and welfare of the child, the court shall consider the following relevant factors:

"* * * * *

"(e) The preference for the primary caregiver of the child, if the caregiver is deemed fit by the court; and

"(f) The willingness and ability of each parent to facilitate and encourage a close and continuing relationship between the other parent and the child. However, the court may not consider such willingness and ability if one parent shows that the other parent has sexually assaulted or engaged in a pattern of behavior of abuse against the parent or a child and that a continuing relationship with the other parent will endanger the health or safety of either parent or the child."

litigate this matter in two states was in bad faith, causing both parties to incur additional expenses and thus diminishing mother's ability to financially care for the children. Moreover, the court's letter opinion reflects that the trial court otherwise considered all the statutorily prescribed factors in ORS 107.137(1). Accordingly, we conclude that the court did not abuse its discretion by considering father's litigious actions in making its best-interests determination.

In his second assignment of error, father claims that the trial court's award of spousal support was unjust and unreasonable in amount and duration. In reviewing a trial court's decision to award spousal support, we are tasked with "deciding only if evidence in the record supports the trial court's findings and reviewing its legal conclusions for errors of law." *Wirth and Wirth*, 319 Or App 169, 174, 509 P3d 685 (2022). Here, the record shows that, in compliance with ORS 107.105(1)(d)(C) the trial court considered the length of the marriage, the age of the parties, the health of the parties, the standard of living of the parties during the marriage, the relative earning capacities of the parties and the parties' employment skills, and mother's new partnership and child born with that partner. The court thus "comport[ed] with the applicable legal framework and describe[d] the basic reasons for the decision." *Olson and Olson*, 218 Or App 1, 15, 178 P3d 272 (2008). And there is ample evidence in the record to support the trial court findings.

Father also argues that the trial court erred in determining that father had spousal support arrearages of $4,402 for payments due from June through November 2019. As the trial court observed, father indicated that he agreed to pay mother $1,500 per month over these six months. Father testified that he intended to leave $1,500 in the parties' joint bank account beginning in June 2019. And the fact that he placed $1,500 per month into a joint account during the relevant period supports the trial court's conclusion that he indeed agreed to pay that amount. Because there was evidence in the record to support the trial court's finding that father agreed to pay spousal support, the trial court did not legally err in ordering father to pay his remaining spousal support obligation. *See Stokes and Stokes*, 234 Or App

566, 579-80, 228 P3d 701 (2010) (discussing a limited judgment requiring the husband to pay temporary spousal support retroactively prior to trial).

Finally, in his third assignment of error, father contends that the trial court erred in ordering him to pay a portion of mother's attorney fees without adhering to ORCP 68. We reject the contention. The record shows that mother filed a motion for attorney fees and costs she accrued while litigating father's motion to dismiss. ORCP 68 C(2)(b) (requiring allegation of entitlement to attorney fees in motion or response to motion). In that motion, she complied with ORCP 68, explaining why the award of attorney fees was reasonable and appropriate, presenting a detailed account of the breakdown of the attorney fees she accrued, and describing which ORS 20.075 factors the court should consider in determining the amount of fees to award. *Cf. Cramblit v. Diamond B Constructors*, 197 Or App 358, 372, 105 P3d 906 (2005) (concluding that the trial court erred in awarding attorney fees to the defendant where the defendant "made no attempt to allege the facts, statute, or rule [that] provides a basis for a fee award" (internal quotation marks omitted)). On this record, we are unpersuaded that the trial court erred in ordering father to pay a portion of mother's attorney fees.

Affirmed.